### Sandra Felice Leas v. James Marc Leas

[737 A.2d 889]

No. 97-452

Present: **Dooley, Morse, Johnson and Skoglund, JJ., and Katz, Supr. J., Specially Assigned**

Opinion Filed June 25, 1999

*John J. Bergeron* of *Bergeron, Paradis, Fitzpatrick & Smith,* Burlington, for Plaintiff-Appellee.

*Susan M. Murray* of *Langrock Sperry & Wool,* Middlebury, for Defendant-Appellant.

**Dooley, J.** Father appeals from a Chittenden Family Court divorce decree that includes a monthly maintenance supplement payable by father to mother pursuant to 15 V.S.A. § 661. The decree also incorporates the parties' agreement that each shall have physical custody of the parties' two minor children for exactly 50 percent of the time. Because we agree with father that § 661 does not authorize the award of a maintenance supplement in such circumstances, we vacate in part and remand for reconsideration of the economic issues resolved in the original decree. We also address father's contention that, in dividing the marital estate, the court improperly sought to take into account any increase or decrease in the value of certain assets between the date of the final hearing and the date of asset transfer.

Upon their divorce, mother and father entered into an agreement to split parental rights and responsibilities equally. This agreement calls for the children to spend 50 percent of their time at mother's home and 50 percent of their time at father's home. The family court found that, upon moving to Vermont, mother left behind a lucrative career editing academic textbooks, which she can pursue only on a limited basis while remaining in Vermont. By contrast, the family's move to Vermont was motivated in part by the availability of a position with IBM for father. At the time of the divorce decree, father could have expected to earn at least $64,000 per year while mother's income was only $27,444. The family court noted that both parties would have to make some "downward adjustments" in standard-of-living as a result of the divorce. However, the court further determined that, "[w]ithout spousal maintenance or maintenance supplement, [mother's] standard of living will be reduced to a far greater extent than [father's] even after child support is factored into the equation." As a result, the court awarded mother four years of spousal maintenance under 15 V.S.A. § 752 as well as a maintenance supplement under § 661, in addition to child support. The family court also divided the marital estate, requiring father to transfer to mother the sum of $103,358, using specified assets from three specific

accounts held under father's name, plus a proportionate share of any appreciation or depreciation of the three accounts that occurred between the date of the final hearing and the date of transfer.

Father contends that a maintenance supplement is inappropriate because the statute authorizing such awards contemplates only a situation where there is one custodial parent and one noncustodial parent, as opposed to situations where, as here, parents share custody equally. The family court rejected this argument, reasoning that such a "narrow" interpretation of § 661 would be inconsistent with the statute's purpose. That purpose is "to correct any disparity in the financial circumstances of the parties if the court finds that the disparity has resulted or will result in a lower standard of living for the child than the child would have if living with the noncustodial parent." 15 V.S.A. § 661(a). While we share the family court's concern about a result that limits the court's ability to correct a relevant disparity in the financial circumstances of some divorcing parents, we agree with father that the plain meaning of the enactment dictates such a result.

The concept of a maintenance supplement appears to be unique to Vermont law, having been created by the Legislature in 1986. See 1985, No. 180 (Adj. Sess.), § 9. In other states, awards available for ongoing living expenses are limited to child support and spousal maintenance (or alimony). By its express terms, the maintenance supplement statute requires that the recipient of the supplement be "the custodial parent." 15 V.S.A. § 661(a). In the same act, the Legislature defined the term "custodial parent," specifically for the purposes of eligibility for a maintenance supplement: "The parent having custody for the greater period of time shall be considered the custodial parent for the purposes of section 661 of this title." See 1985, No. 180 (Adj. Sess.), § 5 (codified as 15 V.S.A. § 657(a)). The Legislature thus clearly expressed its intent to limit the availability of maintenance supplement to the "parent having custody for the greater period of time." *Id.* We are required to apply a statute according to its terms. See *Carter v. Gugliuzzi*, 168 Vt. 48, 53, 716 A.2d 17, 21 (1998) ("Where remedial legislation contains an express limitation, we have generally declined to expand the exception beyond its plain terms."). Having discerned an express limitation that is directly applicable here, our statutory construction task is at an end. See *Harris v. Sherman*, 167 Vt. 613, 614, 708 A.2d 1348, 1349 (1998) (mem.) ("where legislative intent can be ascertained on its face, the statute must be enforced according to its terms without resort to

statutory construction"); cf. *State v. Baldwin*, 140 Vt. 501, 511, 438 A.2d 1135, 1140 (1981) (eschewing "literal interpretation" of "unartfully" drafted statute and thus adopting construction that "will not leave the enactment ineffective or meaningless").

In this instance, however, taking the next step and examining the relevant legislative history reinforces the view that the Legislature made a conscious policy choice to limit the scope of the maintenance supplement statute. An aspect of a statute's history, which we have previously found illuminating in other contexts, is the consideration at the committee level of proposed statutory language. See, e.g., *State v. Forcier*, 162 Vt. 71, 77, 643 A.2d 1200, 1203 (1994) (citing legislative committee discussion as "unequivocally demonstrat[ing]" that legislative intent is consistent with meaning of words chosen). The child support law we are applying here began as S. 286 in the 1986 legislative session and went through extensive mark-up in the Senate Judiciary Committee. The maintenance supplement authorization was proposed by attorney Kimberly Cheney on behalf of the Family Proceedings Advisory Committee, a legislatively-created study committee. As discussed at a March 26, 1986 committee hearing, he offered an amendment to require a court to award "an additional payment characterized as maintenance to be paid while a child support obligation arising out of an action for divorce exists in cases where the noncustodial parent has greater income or earning capacity than the custodial parent." See Draft No. 1, S. 286 (March 25, 1986); Hearings on S. 286 before Senate Judiciary Committee at 50-74 (March 26, 1986). This language was part of Draft 1 of a strike-all version of S. 286 produced for the Senate Judiciary Committee on March 25th in connection with Cheney's testimony. See Draft No. 1, S. 286 at 8 (March 25, 1986). After committee discussion, Janet Ancel of the Legislative Council produced a Draft 2 on March 28th. This draft changed the obligation to award a maintenance supplement in cases "where one parent has greater income or earning capacity than the other parent." Draft No. 2, S. 286 at 8 (March 28, 1986). She explained to the committee that she had made the change, after consulting with attorney Cheney, to allow maintenance supplement in situations of shared custody because "[t]here really is no noncustodial parent in shared physical custody." Hearings on S. 286 before Senate Judiciary Committee at 23-24 (March 27, 1986).

The Senate Judiciary Committee rejected the change that would have allowed maintenance supplement for noncustodial parents. In Draft 3, dated April 1, 1986, the committee not only returned the

maintenance supplement language to the original version to limit availability to custodial parents, but added the specific definition of custodial parent to require that this parent have custody for the greater period of time. See Draft No. 3, S. 286 at 6, 8-9 (April 1, 1986). Through the rest of the legislative process, the bill remained as the committee drafted it, limiting the availability of a maintenance supplement to a custodial parent.

■ To the extent it is helpful to speculate why the Legislature made such an unambiguous choice, there is a myriad of plausible explanations for the decision to limit the availability of maintenance supplement to custodial parents. As pointed out above, maintenance supplement was a new concept in 1986, untried anywhere in the United States, and the Legislature may have decided to go slowly in adopting it. Maintenance supplements were first authorized at the same time the Legislature enacted a new child support law that significantly increased the financial responsibility of many parents; the Legislature may have wanted to limit the extent of that increase. Legislatures operate in a practical world of compromise that intentionally creates narrow and limited responses to problems. As the United States Supreme Court has pointed out, "[d]eciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice — and it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law." *Rodriguez v. United States*, 480 U.S. 523, 526 (1987) (emphasis in original). For this reason, although we agree with the trial court that the primary policy objective endorsed by the Legislature would be furthered if we construed § 661 to authorize a maintenance supplement in the circumstances of this case, we cannot do so without exceeding a clear limitation.*

■ In these circumstances, the appropriate action is not simply to vacate the award of a maintenance supplement but to remand for reconsideration of all economic issues. The family court explicitly determined that mother's need for additional income was not simply relevant to the living standard to be enjoyed by the children but also "to permit [mother] to increase her income from employment and

---

*Accordingly, it is not necessary to consider father's alternative argument that the family court was without authority to award a maintenance supplement because mother did not request one in her complaint, her hearing testimony or her proposed findings of fact.

enjoy a standard of living which is more closely aligned to the standard of living she enjoyed during the marriage." This can be an appropriate basis for an award of spousal maintenance. See 15 V.S.A. § 752(a) (authorizing spousal maintenance upon finding that receiving spouse "is unable to support himself or herself through appropriate employment at the standard of living established during the marriage"); see also *id.* at (b) (setting forth similar considerations as relevant in establishing amount of such maintenance award). Because the family court acted under its understanding of the choices available to it, the court may decide to modify other parts of the economic package in light of this opinion. See *Pearson v. Pearson*, 169 Vt. 28, 36, 726 A.2d 71, 76 (1999) (vacating property division where court abused discretion in making related custody determination); *DeGrace v. DeGrace*, 147 Vt. 466, 470, 520 A.2d 987, 990 (1986) (vacating property division in light of erroneously granted maintenance award). We reopen both the maintenance award and the property award "because of the interrelationship of these two parts of the financial order." *Semprebon v. Semprebon*, 157 Vt. 209, 216, 596 A.2d 361, 365 (1991); see also *Schwartz v. Seldin-Schwartz*, 165 Vt. 499, 504, 685 A.2d 665, 668 (1996) (modification of property settlement necessitates reexamination of the maintenance award). Indeed, what the family court acknowledged here, and what is implicit in cases like *Pearson, DeGrace, Semprebon* and *Schwartz*, is a principle also generally recognized in other jurisdictions: The economic aspects of a divorce decree are sufficiently inseparable so that, in general, when one aspect of the package must be vacated on appeal the family court may revisit the entire package as equity requires. See, e.g., *In re Casias*, 962 P.2d 999, 1002 (Colo. Ct. App. 1998) (trial court should reexamine "entire property division" on remand); *Gregg v. Gregg*, 510 A.2d 474, 484 (Del. 1986) ("this Court recognizes that the entire issue of the division of marital property must be considered anew" on existing record); *Miller v. Miller*, 478 A.2d 351, 360 (N.J. 1984) ("equitable distribution is intimately tied to child support and alimony" so trial court "should reconsider the entire financial arrangements between the parties" including property distribution); *Berry v. Berry*, 350 S.E.2d 398, 403 (S.C. Ct. App. 1986) (not "feasible" for trial court to correct specific errors in property division without remand of entire equitable award); *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985) (striking only portion of property division "would be to make a new division of the estate of the parties, a matter within the discretion of the trial court").

Finally, although it is not necessary in light of our disposition, we address father's challenges to the court's property order provision that allocates to mother a share of appreciation or depreciation in certain investment accounts that occurs between the date of the final order and the date of the transfer of shares in these accounts. Specifically, he asserts that the court's decision to take post-judgment appreciation or depreciation of assets into account contravenes the principle that marital assets should be valued as of the date of the final hearing. See *Kanaan v. Kanaan*, 163 Vt. 402, 411, 659 A.2d 128, 134 (1995) (court's property disposition should be based on valuation as close to date of trial as possible); *Cleverly v. Cleverly*, 151 Vt. 351, 354-55, 561 A.2d 99, 101 (1989) ("It is an abuse of discretion for the trial court to premise its division of marital property on outdated valuations of the assets involved."). No post-judgment valuation of the assets is occurring in this case, however. The situation presented here is more similar to one in which a sum of money that is owed is placed in an escrow account until the time it is transferred.

In *Williams v. Williams*, 158 Vt. 574, 613 A.2d 200 (1992), we reversed a property award that gave a husband $25,000 of the value of the marital home, but delayed distribution until the wife sold the home, she remarried or the daughter of the parties turned eighteen years. We held:

It is axiomatic that the present value of a fixed sum to be paid at a future date is smaller than the face amount of the sum, and that the value decreases the longer the delay until payment. Had the court provided a reasonable rate of interest during the waiting period or divided the award on a percentage basis so that the impact of inflation on the respective interests of the parties would have been equal, it could have avoided the inequity.

*Id.* at 578-79, 613 A.2d at 202; see also *Kanaan*, 163 Vt. at 415, 659 A.2d at 136-37 (same). We recognize that *Williams* requires the family court to account for inflation in a delayed asset distribution only if a lengthy delay is involved. See *Williams*, 158 Vt. at 578, 613 A.2d at 202 (up to fourteen years); *Johnson v. Johnson*, 163 Vt. 491, 497, 659 A.2d 1149, 1153 (1995) (ten or eleven years). We think, however, that as part of the broad discretion the family court has in distributing marital property, see *Renaud v. Renaud*, 168 Vt. 306, 313, 721 A.2d 463, 468 (1998), the court generally has the discretion to

account for changes in value of assets between the time that the court orders their distribution and the distribution actually occurs.

As we noted in *Williams*, the court can deal with changes in value by distributing an asset on a percentage basis. Here, the court could have awarded a specified number of shares in the three accounts equal in value to the amount to be received by mother on the hearing date, and any appreciation or depreciation in the assets would have automatically gone with the award. Although the route the court chose was more complicated, it achieved the same objective of equalizing the risk and opportunity in post-judgment gain or loss up until the time of distribution. We see no abuse of discretion.

■ Finally, father argues that it is unfair that his assets are subject to a post-judgment revaluation while mother's are not. As discussed above, the order that father transfer the appreciation on the amounts designated for mother does not represent a post-judgment revaluation, but an equal sharing of the risk between the parties. In any event, the court has discretion to determine what assets require such treatment and which do not. By their nature, the investment accounts are subject to swings in value, up or down, and no unfairness occurs in singling out these assets for distribution of post-judgment appreciation or depreciation.

*The divorce decree is vacated in part and remanded for consideration of issues related to spousal maintenance, maintenance supplement and division of property. The judgment in all other respects is affirmed.*