130

MICHAEL H. WACHOLDER, Appellant-Respondent, v STEPHANIE WACHOLDER, Respondent-Appellant.

Third Department, February 18, 1993

APPEARANCES OF COUNSEL

*John T. Casey, Jr.,* Albany, for appellant-respondent.

*Joyce M. Galante,* Troy *(Cynthia Feathers* of counsel), for respondent-appellant.

## OPINION OF THE COURT

YESAWICH JR., J.

Plaintiff and defendant were married on August 29, 1964 and had two daughters, Michelle, born March 22, 1969, and Mimi, born August 14, 1970. At the start of the marriage, plaintiff was completing his Bachelor's degree and defendant, having recently received her undergraduate degree, was working. The parties had no appreciable property at that time.

During the marriage, plaintiff held a position with the State of New York and then in 1976 or 1977 became associated with Rensselaer Polytechnic Institute (hereinafter RPI), where he is currently employed in the capacity of director of the Rensselaer Technology Park and also in their development office. While married, the parties purchased a home in the Town of East Greenbush, Rensselaer County, and several parcels of rental real estate in the City of Troy, Rensselaer County. When the children arrived, defendant left the work force to manage the household and care for the children on a full-time basis; she resumed part-time employment in 1973. In 1984, after working for two years full-time as a legislative employee during the State legislative session, defendant was able to obtain full-time year-round employment.

In March 1982 plaintiff left defendant and moved to another residence in East Greenbush; defendant thereafter petitioned Family Court for an order of support, and an order was entered on June 27, 1983 directing plaintiff to pay defendant —and he has dutifully done so—$600 per month per child for child support and $225 per month to assist with the mortgage payment and taxes on the marital residence. The parties stipulated to joint custody of both daughters with their primary residence being with defendant.

Thereafter, on December 28, 1983, plaintiff commenced this action for a divorce and for equitable distribution of the

marital assets. Defendant answered and counterclaimed for divorce charging, among other things, that plaintiff had abandoned her. The matter was tried in April 1990 and in a comprehensive decision dated December 10, 1991, Supreme Court granted defendant a divorce based on abandonment, distributed the marital property, terminated the remaining portions of Family Court's order—the child support provisions had been terminated by stipulation entered into November 5, 1991 in Family Court after Mimi passed her 21st birthday—and awarded defendant retroactive child support for the girls' college and figure skating expenses up to the age of 21. Both parties appeal.

■ Plaintiff takes issue with Supreme Court's award of retroactive child support, directing plaintiff to reimburse defendant in the amount of $10,229, representing two thirds of the children's college costs, and $36,516.91, representing two thirds of Mimi's figure skating costs. At the outset, we find the apportionment of these charges, two thirds to plaintiff, based as it is on the disparity in the parties' income and the fact that plaintiff had the avails of the income from the parties' rental properties, both fitting and proper.

Initially, plaintiff contends that it was error for Supreme Court to deviate from the numerical percentages mandated by the Child Support Standards Act; however, Supreme Court's determination to depart from those standards was founded on several of the statutorily permitted reasons for doing so, namely, the special needs and aptitudes of the children and the preseparation standard of living of the family, and thus represented an acceptable exercise of discretion (see, Domestic Relations Law § 240 [1-b] [f]; Bohnsack v Bohnsack, 185 AD2d 533, 535). Moreover, the circumstances fully justified the court's revision of the seven-year-old Family Court order. When that order was originally entered, the children were in their early teens, at which time it could not be ascertained whether they would even attend college (see, Gilkes v Gilkes, 150 AD2d 200, 201). Likewise, the level to which Mimi's skating talent would develop (she is a nationally ranked competitive figure skater) could not have been appreciated at that juncture. Thus, defendant's request for assistance with the college needs of the children cannot be characterized as "an attempt * * * to readjust the respective obligations of the parties", but rather simply as a recognition that the prior award has become inadequate as the children have grown (Matter of Sujko v Sujko, 160 AD2d 1184, 1185).

Plaintiff also asserts that as figure skating is not a "necessary", he should not be obligated to pay any portion of those expenditures. The record indicates, however, that both children were encouraged to skate at an early age and that Mimi was urged to pursue skating throughout her teen years. Plaintiff himself went to her competitions, was proud of her and always encouraged pursuit of this talent. Furthermore, Mimi is obviously quite gifted, having competed on the national level, and hopes to establish a career as a skating coach. Accordingly, these costs were a proper factor for Supreme Court to consider, as they involved both Mimi's "special * * * aptitude[]" and her preseparation standard of living (Domestic Relations Law § 240 [1-b] [f] [2], [3]). And, given the quantity of trial testimony devoted to this issue, defendant's counterclaim is deemed amended to conform to the proof to seek additional child support for the children's educational expenses and Mimi's skating expenses (see, Carco, Inc. v Beltrone Constr. Co., 183 AD2d 984, 985).

Defendant, on the other hand, is critical of Supreme Court's decision to end plaintiff's child support obligation when the children reach age 21. Shortly after both children reached 21, defendant stipulated that the support order was to terminate on November 5, 1991. No compelling reason to extend plaintiff's obligation beyond the agreed-upon date has been advanced.

With regard to the actual amounts of the distributive award made to defendant to reimburse her for these expenditures, plaintiff questions Supreme Court's determination that a tuition benefit* was marital property. The benefit was initially acquired as part of his compensation package during the marriage but was able to be used only after the commencement of the divorce action, for it was not until then that the children reached college age. He maintains that inasmuch as the tuition benefit merely had contingent value at the time the lawsuit was commenced in 1983, as it was subject to complete defeasance if he decided to change employers before the children attained college age, it should have been treated as his separate property, and applied solely to reduce his share of the college costs. This benefit is analogous to a nonvested pension interest in that it only has value so long as

---

* By reason of his employment at RPI, plaintiff receives a tuition benefit of up to one half of RPI's tuition, payable to colleges his children attend, to reduce their tuition.

the employed spouse remains so employed; notably, such a pension is nonetheless considered marital property (see, Culnan v Culnan, 142 AD2d 805, 806, lv dismissed 73 NY2d 994). Furthermore, to the extent that the tuition benefit was part of plaintiff's employment compensation package during the marriage, it was received in lieu of other compensation that would have augmented marital assets or the marital standard of living. Consequently, as in the case of a pension, this benefit cannot properly be treated as entirely marital property, as Supreme Court concluded, nor as wholly separate property, as plaintiff desires, but should be prorated between marital and separate property, based on the number of months that plaintiff was employed by the benefit provider (here, RPI) during the marriage as a percentage of the total period of such employment (see, Majauskas v Majauskas, 61 NY2d 481, 491-492).

In this case, the period during which plaintiff was employed by RPI in a capacity which allowed him to accrue or maintain the tuition benefit, up until the commencement of the action, is to serve as the numerator of a fraction, with the entire period of such employment with RPI, calculated separately for each child until that child's benefit is exhausted, serving as the denominator. This fraction represents the portion of the tuition benefit that is marital property, to be applied against the college costs as a whole before those costs are divided between the parties. The remaining portions of the benefit, which are plaintiff's separate property, may be applied against his share of the costs after they are divided. Because the record does not establish precisely when plaintiff began working for RPI, we cannot determine exactly what portion of the tuition benefit for each child is to be considered marital property, and we therefore remit for further proceedings to reallocate the tuition benefit and redetermine the amount owed by plaintiff for college expenses.

Moreover, with respect to the girls' college expenses, the amount of any grants received by them should be subtracted from each child's yearly total expenses before the parties' shares of each child's costs are determined. By the same token, loans obtained by the children, though the children's responsibility, reduce the amount for which the parties are liable; thus, neither parent is entitled to obtain reimbursement for this portion of the college expenses. Therefore, these amounts should also be subtracted before the expenses are divided.

Although a retroactive award of support is indeed appropriate here, Supreme Court erred in allowing payment for figure skating costs incurred prior to the commencement of the action, which is the earliest point in time from which such relief could be considered to have been sought. Accordingly, amounts which represent expenses incurred in 1982 and 1983 should be deducted from the total of those expenses. In addition, the $19,000 reimbursement defendant assertedly obtained from certificates of deposit and other accounts, to the extent the same were established and funded by the parties during the course of the marriage, should also be deducted.

The parties also raise several questions with respect to the distribution of their marital property, the foremost being the proper date and method of valuation of plaintiff's State and RPI pensions, which appreciated significantly between the commencement of the action and the trial. Supreme Court, observing that plaintiff was able to participate in two pension plans and that defendant's ability to develop pension benefits was limited during the marriage because she was maintaining the home and caring for the parties' children, awarded her two thirds of defendant's pensions. Defendant concurs, but adds that to account for the passive appreciation in their worth (see, Glass v Glass, 177 AD2d 807), the pensions should have been valued as of 1989 at the time of trial, rather than as of 1983 when the action was commenced. Plaintiff urges that while the pensions were properly valued, the court erred in awarding two thirds thereof to defendant.

Albeit Supreme Court correctly determined that the pensions are marital property, and that defendant is entitled to receive her share of their present value in the form of a distributive award, we find no justification for awarding her a two-thirds share of that value. As with the other marital assets, an equal distribution is called for.

With respect to the proper valuation date, we begin with the fundamental premise that defendant is bound by the terms of her stipulation, entered into at the commencement of the trial, to value plaintiff's pensions as of December 1983 at $32,478. As part of that stipulation, however, defendant reserved the right to present actuarial testimony with regard to "after activity" which could render the use of the stipulated value unfair, and at trial it was established that approximately one third of the very considerable increase in value of the RPI pension after the date of commencement of the action was due to an unexpected change in the formula used to

calculate the benefits to be paid. Although defendant argues that this change in the formula is a "passive" change in the pension value, akin to market fluctuations and the like, and therefore that she should share in this portion of the increase, we are unconvinced.

Plaintiff's pension is part of his compensation package, and just as parts of that package earned during the marriage, such as the tuition benefit hereinbefore discussed, can be considered to have been received in lieu of other compensation which would have swelled the pool of marital assets, benefits earned after commencement of the action must be deemed separate property, inasmuch as they substitute for other compensation which would have been separate property. Furthermore, as the commencement of a divorce action ordinarily marks the closing date of the marital property accrual period *(see, Anglin v Anglin,* 80 NY2d 553), there is no justification for treating compensation received after that date as marital property merely because it takes the form of a change in formula rather than a cash bonus, raise or analogous benefit. In view of the fact that defendant presented no evidence of truly passive appreciation in the pensions' value, i.e., a change over which neither the employer, employee nor spouse has any control, Supreme Court's use of the stipulated value was not inappropriate.

Applying the foregoing rationale, defendant's share of the parties' three pensions, which total $33,978, is thus $16,989; reduced by the $1,500 she already has, this results in a distributive award of $15,489.

■ With respect to the remainder of the parties' property, defendant claims that she did not receive credit for any portion of the value of two automobiles; she did, however, receive all of the household furnishings and another car. She requested a distributive award to compensate her for lost earnings occasioned by her delayed reentry into the work force; however, there is no authority for such an award *(see, Cappiello v Cappiello,* 66 NY2d 107, 109-110). Finally, defendant disputes Supreme Court's decision not to award her counsel fees. As defendant can clearly afford to pay for her own counsel, this decision was not an abuse of discretion *(see, Garges v Garges,* 175 AD2d 511, 513; *Sementilli v Sementilli,* 102 AD2d 78, 91).

■ For his part, plaintiff faults Supreme Court for allegedly failing to consider the tax consequences of awarding him the

rental properties, the sale of which purportedly will result in a capital gains tax liability of $60,000, while awarding defendant the marital residence for which a capital gains tax exemption may be available. The court did, however, consider this factor, balancing it against (1) the depreciation that plaintiff has taken as a tax deduction for the past several years and may continue to claim until the properties are sold, (2) the speculative nature of such a tax sale (the basis of the properties could be stepped up, and the appreciation never subject to tax, if the parcels are held until plaintiff's death), (3) the difference in value (the properties awarded to plaintiff were valued at approximately $13,500 more than defendant's property), and (4) the improvements defendant made on the marital home out of her separate funds, for which she was not given separate credit. All in all, the court fashioned an eminently equitable distribution of the parties' real and personal property.

The parties' other arguments have been considered and found to be without merit.

WEISS, P. J., MIKOLL, MERCURE and CREW III, JJ., concur.

Ordered that the judgment is modified, on the law and the facts, without costs, to the extent that the values decreed for the children's college and figure skating costs, and the distribution of the parties' pension interests, are stricken; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.