OPINION OF THE COURT
Richard A. Dollinger, J.
In this matter, a couple, who punted the issue of financing their child’s college to a “day in the future” in their separation stipulation, have now arrived at “the day of reckoning” and, because they can not now agree on even “the time of day,” the court must decide how to allocate the costs of their son’s college education.
The stipulation provided that the parents would “each pay and contribute to the best of their then ability.” They also agreed that “the parents[’] maximum contribution for both of them shall be the published cost of SUNY education cost for each college year.” They agreed that the term “cost” would include “transportation, tuition, students[’] fees, room and board, books and supplies, personal and transportation, sharing the costs of pre-college examinations and applications.” The parents’ obligation would be “net of any financial aid of any *173 kind or nature that the children may receive.” They agreed that the financial aid package would include “grants” or “whatever financial aid each child may receive.” If they could not work out the contributions, it was agreed that they could ask this court to do so.
The complication arose in this case because of an unusual benefit obtained by the husband’s second wife. The second wife works for an academic institution. As part of her benefits, she elected to have her husband’s son, who resided with his father, covered by a benefit plan that included a tuition-free college education. When the couple attempted to calculate their contributions under the stipulation, the husband argued that the tuition-free benefit, derived solely because of his then wife’s employment, should be credited as his contribution to the child’s college education. Because the cost savings from the tuition benefit exceeded the husband’s otherwise calculated share under what is commonly known as the “SUNY cap,” the husband argued that the remaining costs—room and board, books and fees—were not his obligation to pay; if his former wife paid these expenses, she did so without a right of contribution from him. The couple failed to work out this conundrum, and now ask this court to decide how to allocate the costs under their stipulation.
Before resolving the legal issues, the question of the husband’s child support needs resolution. The parties’ second son has lived with his father since August 2011, even though the husband has been paying child support for him. The wife concedes that the husband/father should not be paying support for this child. The husband’s application to terminate support for this child is granted, effective on the date of the filing of this motion. Any overpayments made since the date of the filing may be credited against any liabilities set forth as a result of this decision. In addition, the support should be recalculated, with the mother having primary residence of two children and the husband having primary residence of one. These calculations and the offsets should be forwarded to the court within five days of this decision.
In considering the broader question of the parents’ liability for college expenses, the first step is easily advanced: this court is bound by the couple’s stipulation. Under the standard contract interpretation rubric, if the stipulation is unambiguous on its face, it must be enforced according to its terms. (Matter of Korosh v Korosh, 99 AD3d 909 [2d Dept 2012] [marital settle *174 ment is a contract subject to principles of contract interpretation and the court should interpret the contract in accordance with its plain and ordinary meaning]; Ackermann v Ackermann, 82 AD3d 1020 [2d Dept 2011] [where an agreement is clear and unambiguous on its face, the intent of the parties must be gleaned from the four corners of the instrument, and not from extrinsic evidence]; Rosenberger v Rosenberger, 63 AD3d 898 [2d Dept 2009].) In applying this principle, several terms are significant. The first is that the couple agreed to contribute to the “best of their then ability.” This court has previously reviewed similar common language terms to determine parents’ contributions to college education. (L.L. v R.L., 36 Misc 3d 777 [Sup Ct, Monroe County 2012] [discussing what “respective means” means when considering the parental obligation to finance college education].) Importantly, in this case, the couple did not choose the word “income” in their stipulation, a word that would suggest the ability to pay would be based solely on the individual parent’s income, such as might be revealed in a parent’s separately filed income tax return. The use of the phrase “ability” implies that other assets—available bank accounts, available home equity lines of credit, retirement accounts with available loans, parental resources or income from other family members (including a new spouse), could be considered by the court before determining a parent’s “then ability to pay.” The word “ability” also implies that the parent’s ability to pay college education costs could be based on some combination of their entire household income and, thus, the court should consider the demands of their entire household, the lifestyle of the household and other factors, including the obligation to support other children. Finally, the parents in the stipulation clearly intended that their children apply for any “financial aid package” and agreed that it would include “non-subsidized or subsidized loans, grants etcetera; whatever financial aid the child might receive.” This broad language evinces a parental decision to apply all types of financial aid against the college costs before the parents determine “their respective contributions to the net college cost.”
Before exploring what the parents might have to pay, this court must determine, under the unique circumstances of this case, whether either parent has any obligation to pay any costs after application of the tuition benefit. The husband, in reading the stipulation, argues that the tuition-free benefit, valued at approximately $40,000, has the practical effect of meeting both *175 parents’ obligation to finance college education and removes from either parent any obligation to contribute further. Under this argument, the value of the tuition benefit exceeds the “SUNY cap,” and hence, extinguishes any further parental support obligation. In the alternative, he argues that the tuition benefit, derived solely from his second wife’s employment, should be credited solely against his financial contribution and, therefore, while there may be additional out-of-pocket expenses, these should be paid by his former wife up to the amount of her share of the SUNY cap.
However, these arguments are inconsistent with the terms of the stipulation and New York public policy. First, the husband describes the tuition benefit as “neither fish nor fowl,”[1] suggesting that this benefit is neither a loan nor a grant as those terms are used in the stipulation. In reaching this conclusion, the husband fails to read that portion of the stipulation which states that the parents’ obligation is “net of any financial aid of any kind or nature that the children may receive.” The stipulation lists a series of expected “financial aid” sources—“non-subsidized or subsidized loans, grants, etcetera,” but then adds the catch-all phrase “whatever financial aid the child might receive.” The parents clearly intended to garner every possible source of assistance in paying for college. The stipulation, for example, required the mother to file a financial aid form.[2] Examined in this light, the tuition-free benefit derived through the husband’s second wife is unmistakably a form of “financial aid”—an “aid” to cover the financial cost of the tuition. The stipulation states that the parental obligation is “net” of any financial aid “that the children may receive.” In this case, the child “receives the aid.” There is no evidence that the academic institution pays any sums to either parent or to the husband’s current wife. There is no evidence that the benefit is “received” by the second spouse. It may be “received by the child” because of the second spouse, but the actual benefit goes directly to the child and reduces the child’s tuition and costs.
Second, the stipulation clearly envisions that this “financial aid” will be subtracted from the total cost before the parental *176 contributions are defined. The two words “net of’ are the accounting equivalent of the word “minus” or “subtracted from.” (See United States v Genova, 333 F3d 750, 761 [7th Cir 2003]; Goldstein v AccuScan, Inc., 2 NY3d 811 [2004] [“net of’ means “minus” or the amount left after some sum has been subtracted from the other].) Thus, to determine how the SUNY cap applies, the stipulation, read in its entirety, suggests that the entire college cost is compiled, any “financial aid” from any source other than the parents’ pockets is deducted from that total, and then the parents contribute their respective shares up to the total of a SUNY cap.
Third, the language of the stipulation is obvious testament to the fact that the parents wanted to cap their annual out-of-pocket investment in the children’s education at an amount no greater than the SUNY cap. The language is clear evidence that both parents knew, generally, what “the cap” entailed, and they agreed to pay annually up to that cap, even if the child received no financial aid. Therefore, if the “financial aid” by the child reduces the college expenses to a total less than the amount otherwise to be paid under a SUNY cap, then neither parent can complain because their original intention—to cap their collective annual expenses at an amount less than or equal to the SUNY cap—will have been achieved.
In contrast, if the financial aid were considered as a parental contribution and offset either or both parents’ obligations, the practical effect would be one of two outcomes. If the entire amount were credited against the husband’s share of the contributions, the wife would be obligated to contribute her share of the SUNY cap without any out-of-pocket contribution from the husband. This outcome would have the practical effect of negating the cost-sharing scheme envisioned in the stipulation and transferring the remainder of the out-of-pocket “college costs” to the mother. If credited against the obligation of both parents, then neither parent would be obligated under the stipulation to contribute any amount to their son’s college expenses, despite their pledge to each other in their divorce stipulation to ante up to the SUNY cap. The child would end up stuck with the balance of the expenses for college and the parents, despite their pledge to pay out of their pockets up to the SUNY cap, would end up with no obligation to pay any college costs. The later reading would shift the additional cost of college from the non-paying parents to the not-as-yet-employed child.
*177 In this court’s view, both of these interpretations suggested by the husband run counter to the stipulation and New York’s legislative policy of requiring parents, as part of their duty to support their children, to shoulder most of the costs of a college education for their children if financially feasible. The legislative directive is found in Domestic Relations Law § 240 (1-b) (c) (7), which permits judges to direct contribution for a child’s college expenses even in the absence of a voluntary agreement of the parties “having regard for the circumstances of the case and of the respective parties and in the best interests of the child, as justice requires.”[3] In implementing this directive, New York courts have set forth factors to be considered in such a determination, including the educational background of the parents and their financial ability to provide the necessary funds, the child’s academic ability and endeavors, and the type of college that would be most suitable for the child. (Scanlon v Scanlon, 41 Misc 3d 1204[A], 2013 NY Slip Op 51573[U] [Sup Ct, NY County 2013]; see also Romansoff v Romansoff, 167 AD2d 527 [2d Dept 1990] [the relevant factors in making such a determination are: (1) the educational background of the parents, (2) the child’s academic ability, and (3) the parents’ financial ability to provide the necessary funds].) This “generalized judicial discretion” is most often articulated as the Second Department said in Matter of Paccione v Paccione (57 AD3d 900, 904 [2d Dept 2008]): “[Determining whether to award educational expenses [as part of the support for the child], the court must consider the circumstances of the case, the circumstances of the respective parties, the best interests of the children, and the requirements of justice.” (Matter of Rabasco v Lamar, 106 AD3d 1095, 1096 [2d Dept 2013]; Matter of Holliday v Holliday, 35 AD3d 468, 469 [2d Dept 2006].)
New York’s decidedly pro-child attitude to financing college education is demonstrated by repeated cases in which the courts have broadly interpreted contract language requiring parents who undertake a general obligation to “pay according to their means” or “their then ability” to pay for loans incurred by a student, even though the underlying agreement never required it. In Matter of Rashidi v Rashidi (102 AD3d 972 [2d Dept 2013]), the Court, interpreting a judgment of divorce which *178 called for the application of a SUNY cap,[4] 5and despite any indication in the judgment of divorce regarding the allocation of the student loans, held that the parents were liable to repay any loans incurred by the son. The Court stated:
“[F]ather’s share of college expenses for the child should be based on the total cost of tuition, room and board, college fees, and books and miscellaneous expenses as estimated by the university attended by the child, less only the sum of all nonrepayable scholarships, grants, and work-study payments or credits.” (Matter of Rashidi v Rashidi, 102 AD3d at 973.)
The Second Department’s conclusion in Matter of Rashidi v Rashidi parallels a number of similar holdings which are further evidence of New York’s “pro-student-let-the-parents-pay-if-able” philosophy in financing college education. (Bungart v Bungart, 107 AD3d 751 [2d Dept 2013] [in the absence of a clear and unambiguous provision expressly authorizing the deduction of the children’s student loans from the college expenses toward which the parties agreed to pay, a court should not take into account any college loans for which the student is responsible]; Matter of Yorke v Yorke, 83 AD3d 951 [2d Dept 2011] [in determining the parents’ respective obligations towards the cost of college, a court should not take into account any college loans for which the student is responsible].) In some cases, New York’s “student-first” policy has resulted in appellate determinations denying an application to cap parental costs at the SUNY cost because of the child’s capabilities, the parental college experience and the parents ability to finance a private school. (Tishman v Bogatin, 94 AD3d 621 [1st Dept 2012],)[5]
In this court’s view, this callithump of appellate court decisions is evidence that New York public policy strongly favors parental contributions to a child’s education. When applied to this case, it militates against any reading of this stipulation which would obviate the agreed-upon parental obligation and *179 transfer costs unnecessarily to the student.[6] This New York preference for shared parental support—albeit based on “ability” or “means”—after financial aid derived from a third-party source is applied to reduce costs is consistent with articulated public policies in other states. (In re Matter of Marriage of Grittman, 730 NW2d 209 [2007] [table; text at 2007 WL 601758, 2007 Iowa App LEXIS 204 (2007)] [scholarships and other tuition assistance are deducted before parental contribution calculated]; Stohler v Stohler, 953 NE2d 1279 [2011] [table; text at 2011 WL 4336741 2011, Ind App Unpub LEXIS 1295 (2011)] [godfather gift was credited only against the child’s share of educational costs]; Showalter v Showalter, 962 NE2d 702 [2012] [table; text at 2012 WL 566389, 2012 Ind App Unpub LEXIS 202 (2012)] [scholarship credited only against the child’s contribution].) Furthermore, in other states, a tuition benefit, available through a parent, has been held to benefit both spouses and reduce their joint contribution to college costs. In a comparable context, a veteran in New Jersey argued that his earned post-9/11 G.I. Bill education benefits should be allocated solely to his required contribution to his daughter’s college costs. The court disagreed, holding that the benefit “should reduce both parties’ responsibility for college costs.” (Womer v Poling, 2012 WL 4795603, *8, 2012 NJ Super Unpub LEXIS 2276, *23 [App Div 2012]; Johnson v Johnson, 979 NE2d 718 [2012] [table; text at 2012 WL 6017943, 2012 Ind App Unpub LEXIS 1496 (2012)] [disabled veteran tuition benefit derived solely from the husband was considered financial aid that reduced the contributions of both spouses to college costs].) The only contrary conclusion found in a review of other states’ analysis arises if the tuition benefit is part of employee compensation and subject to income tax, a factor that shifts the analysis and directs that the contributing parent alone should get credit for the payment against their share of the expenses. (Jones v Jones, 2009 WL 4017163, 2009 Tenn App LEXIS 773 [Nov. 19, 2009, No. M200701534-COA-R3-CV2009] .)[7]
*180 Based on these factors, the tuition-free benefit, although derived from a parent’s spouse, is applied against the child’s share first, and then applied against the balance amount owed to reduce the parents’ individual contributions. The total cost (including tuition, room and board, books, fees and other costs specified in the stipulation) is computed, the value of the tuition benefit deducted, and then the parents each contribute to the remaining costs, based on their ability to do so and subject to the agreed SUNY cap.
The second question before the court is how to allocate those remaining expenses. In reviewing the plethora of cases allocating college expenses, the court is struck by a contrast between the strong directive from the legislature and appellate courts to require parental contribution to college and the seeming lack of guidelines to implement those directives. In some respects, the New York appeals courts have advised trial courts on what rules do not apply to the required allocation. The college expenses need not necessarily be shared in the same proportion or percentage as each parent’s income bears to the combined parental income. (Cimons v Cimons, 53 AD3d 125, 130 [2d Dept 2008]; C.M.S. v W.T.S., 37 Misc 3d 1228[A], 2012 NY Slip Op 52221[U] [Sup Ct, Monroe County 2012].) In addition, the Appellate Divisions have signaled that the courts must consider the financial impact of its allocation of expenses upon either parent’s ability to maintain a separate household, which includes non-college-aged dependents. (Matter of Ocasio v Smith, 70 AD3d 952 [2d Dept 2010]; see also Matter of Amos-Richburg v Richburg, 94 AD3d 1112 [2d Dept 2012] [father’s ability to support himself and maintain his own household would be impaired if he were directed to pay his pro rata share of the child’s private school expenses]; Manno v Manno, 196 AD2d 488 [2d Dept 1993] [the court must take into account the need of a parent to maintain a separate household and have money to live on after support payments are made]; Beth M. v Joseph M., 12 Misc 3d 1188[A], 2006 NY Slip Op 51490[U] [Sup Ct, Nassau County 2006] [the children’s academic abilities and interests, their likely choices *181 and preferences for college education, whether the children attend high school where most students go on to college, and the likely costs involved].)
Faced with this array of suggestions from the appellate courts, this court consulted two additional resources. The first is New York’s articulated policy criteria for supporting children: the Child Support Standards Act. (Domestic Relations Law § 240 [f].) Under the Act, the court can consider the “financial resources” of the parents, the tax consequences to the parents,[8] and any other relevant factors. The second source for guidance is a series of criteria borrowed from New Jersey and the holding of its Supreme Court in Newburgh v Arrigo (88 NJ 529, 545, 443 A2d 1031, 1038-1039 [1982]; see also Groninger v Groninger, 2013 WL 4778542, 2013 NJ Super Unpub LEXIS 2232 [Sept. 9, 2013, docket No. A-5882-11T4]).[9] In Newburgh, the court, faced with a request to fund college education costs without a prior agreement by the parents articulated a dozen factors to be considered in resolving a parental contribution to *182 college education. While this case already has an agreement to fund the cost and while a number of the factors may not be relevant, the following factors are relevant:
1. the ability of the parent to pay the cost from their annual income;
2. the relationship of the requested contribution to the kind of school or course of study sought by the child;
3. the financial resources or assets of both parents or their access to other assets or income from other members of the household or grandparents and the lifestyle of their current household;
4. the commitment to and aptitude of the child for the requested education;
5. the financial resources of the child, including assets owned individually or held in custodianship or trust;
6. the ability of the child to earn income during the school year or on vacation;
7. the availability of additional financial aid in the form of college grants and loans;
8. the child’s relationship to the paying parent, including mutual affection and shared goals as well as responsiveness to parental advice and guidance; and
9. the relationship of the education requested to any prior training and to the overall long-range goals of the child.
In this court’s view, these criteria, in varying degrees, provide a matrix against which to calculate the contributions of both of these parents to the remaining costs of their son’s college education, and the future education of their other children. At this point, this court does not have sufficient information to calculate the respective contributions of the two parents. The husband argues that his former wife left her high paying job to have a second family and demands that income—comparable to the employment she voluntarily relinquished—be imputed to her. Neither party has provided any indication of household income, including the income of their new spouses or their lifestyle. There is no evidence of the child’s ability to earn income or contribute to these costs or the possibility of contributions from grandparents or other relatives. There is no evidence of the relationship between the college student and his parents. Faced with a lack of this evidence, this court cannot reach any conclu *183 sion regarding the parents’ “ability to pay.”[10] The determination of the parents’ respective ability to pay requires a hearing.
However, the tuition benefit is applied first to the child’s contribution or, in the alternative, to reduce the overall costs and then the remaining amount owed—for all the agreed college expenses—is subject to allocation based on their current “ability.” From this court’s point of view, the application of the contract language, consistent with New York’s public policies, will permit this student to reach an enviable goal: graduation from college without significant debt. In that fashion, while the parents may dispute its wisdom, the courts—both in New York and elsewhere—have affirmed its necessity as a parental obligation when parents, who benefitted from similar education, have available means:
“In the past, a college education was reserved for the elite, but the vital impulse of egalitarianism has inspired the creation of a wide variety of educational institutions that provide post-secondary education for practically everyone. State, county and community colleges, as well as some private colleges and vocational schools provide educational opportunities at reasonable costs. Some parents cannot pay, some can pay in part, and still others can pay the entire cost of higher education for their children. In general, financially capable parents should contribute to the higher education of children who are qualified students.” (Newburgh v Arrigo, 88 NJ at 544, 443 A2d at 1038; see also Poberesky v Poberesky, 71 AD3d 516 [1st Dept 2010] [noting, with approval, the husband for his overtime work to allow his daughter to graduate from college without debt].)
This court will convene a hearing in the near future to resolve the issue of the respective parental contributions to college costs outstanding after application of the tuition-free benefit.
*184 The motions are resolved as follows:
A. the husband’s motion to transfer primary residence of the second child to himself is granted;
B. the husband’s motion to terminate child support for the second son is granted, effective on the date of the filing of the husband’s motion;
C. the husband’s motion to recalculate child support for all of the couple’s children is granted to the extent of terminating the husband’s obligation for the second son and reserved to the extent of recalculating his obligations for the remaining two children until this court can resolve any imputed income of the wife;
D. the wife’s cross motion to establish the net child support paid to her for the two children remaining in her residence is reserved until a further hearing of this matter;
E. the wife’s motion to assess college education costs to the husband between 2010 and 2013 is granted to the extent of declaring that the parties’ stipulation does not permit the husband to credit a tuition benefit, obtained from his second wife, to otherwise diminish any amounts otherwise owed by either the husband or the wife in this case;
E the husband and wife each remain liable, according to their current ability, for any college costs, as defined in the stipulation, which are not covered by the tuition benefit, collectively up to the amount of the published cost of an average SUNY education cost as set forth in the stipulation; and
G. the wife’s cross motion for a judgment in the amount of $20,845.50 representing the husband’s alleged contribution to college expenses incurred by the wife in excess of the tuition benefit is denied as premature, as the issue of the husband’s “ability to pay,” and the wife’s ability to pay and the percentage contributions of the parents to the college costs are reserved until a further hearing on this matter; and,
H. to the extent that either party requests such other and further relief, these requests are reserved until a hearing on this matter as directed by the court.

. (See Brown v Entertainment Merchants Assn., 564 US —, —, 131 S Ct 2729, 2741 [2011].) At least one New York court has suggested the phrase “nor good red herring” should follow this idiom. (Matter of Commissioner of Social Servs, v Vito G., 171 Misc 2d 315, 318 [Fam Ct, Ulster County 1996].)

. The mother was required to file a Free Application for Federal Student Aid to determine the financial package, a further indication that the parents intended to tap every possible source for financial aid.

. The New York Family Court Act contains a similar provision permitting judicial discretion to impose college costs on parents. (Family Ct Act § 413.)

. In this case, the judgment recited that the parents had agreed to make these contributions, but there is no evidence that the obligation was based on an oral stipulation or a written agreement. It appears the Court imposed these conditions in the judgment.

. Similarly, the lopsidedly pro-student court decisions include requirements that parents finance incidental college expenses. (A.C. v J.O., 40 Misc 3d 1236[A], 2013 NY Slip Op 51323[U] [Sup Ct, Kings County 2013] [even in the absence of an agreement, the court required parents to pay their proportionate share of college application fees, fees for the SAT and other precollege standardized tests, and preparation costs for those tests].)

. In reaching this conclusion, the court declines to rely on Wacholder v Wacholder (188 AD2d 130 [3d Dept 1993]), cited by the wife’s counsel. In that case, the Court held that the disputed tuition benefit was partly marital property. In this case, the wife/mother has no marital claim to the tuition benefit as it arises by virtue of the husband’s second marriage.

. In Jones v Jones, the underlying agreement simply provided that each parent would pay one half of the expenses incurred by their daughters for col *180 lege tuition and books. The Tennessee court, noting that there was no offset for scholarships or grants, declined to rewrite the agreement and held that without an offset, the wife could consider her tuition benefit, received as part of her compensation package and possibly subject to income tax, as her contribution to the college expenses. (Jones v Jones, 2009 WL 4017163, *4 n 4, 2009 Tenn App LEXIS 773, *11-12 n 4.) In this case, the couple agreed to an offset against those expenses by “financial aid of any kind or nature,” a fact which easily distinguishes this case from the holding in Jones v Jones.

. Tax credits should be a factor in allocating college costs. Section 25A of the Internal Revenue Code (26 USC § 25A) provides for two different higher education tax credits—the “Hope Scholarship Credit” under section 25A (b) and the “Lifetime Learning Credit” under section 25A (c). (In re Briley, 2013 WL 3146901, 2013 Bankr LEXIS 2491 [SD Ind, June 19, 2013, case No. 12-14716-RLM-7A]; see also Schramm v Schramm, 2008 WL 809025, *2, 2008 Conn Super LEXIS 569, *5 [Mar. 12, 2003, No. EA074105616S] [the value of the tax credits and deductions can certainly then be factored into any formula used for the allocation of expenses between them]; Hopper v Hopper, 773 So 2d 395 [Ct App Miss 2000]; Rosen v Rosen, 2009 WL 4724262, 2009 NJ Super Unpub LEXIS 3017 [Dec. 11, 2009, docket No. A-0504-08T1].) The New York courts have also recognized tax consequences when liquidating assets to fund college expenses. (Manno v Manno, 196 AD2d 488 [2d Dept 1993].)

. In evaluating the claim for contribution toward the cost of higher education, courts should consider all relevant factors, including (1) whether the parent, if still living with the child, would have contributed toward the costs of the requested higher education; (2) the effect of the background, values and goals of the parent on the reasonableness of the expectation of the child for higher education; (3) the amount of the contribution sought by the child for the cost of higher education; (4) the ability of the parent to pay that cost; (5) the relationship of the requested contribution to the kind of school or course of study sought by the child; (6) the financial resources of both parents; (7) the commitment to and aptitude of the child for the requested education; (8) the financial resources of the child, including assets owned individually or held in custodianship or trust; (9) the ability of the child to earn income during the school year or on vacation; (10) the availability of financial aid in the form of college grants and loans; (11) the child’s relationship to the paying parent, including mutual affection and shared goals as well as responsiveness to parental advice and guidance; and (12) the relationship of the education requested to any prior training and to the overall long-range goals of the child. (Newburgh v Arrigo, 88 NJ at 545, 443 A2d at 1038-1039.)

. This court has considered whether the phrase used by the parents—• “their then ability to pay”-—should be read narrowly to confine the evidence in any hearing solely to the income generated by eacb parent and not consider proof on the other factors, including the relationship between the parents and their son. At this stage, this court declines to read the stipulation that narrowly and reserves to the trial the legal question of whether non-monetary factors (e.g., the relationship between the child and each parent) may be considered and whether some income—other than that directly attributable to the parents’ efforts—should be considered as well.