NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 115

No. 2015-466

| | |
|---|---|
| Edward F. Flanagan | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Family Division |
| | |
| Nancy duMont (Flanagan) | May Term, 2016 |

Dennis R. Pearson, J.

Peter G. Anderson of Anderson & Associates, Stowe, for Plaintiff-Appellee.

Cynthia L. Broadfoot of Broadfoot, Attorneys at Law, Burlington, for Defendant-Appellant.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **ROBINSON, J.** This appeal arises from a dispute regarding the parties' obligations with respect to several tax liens discovered post-divorce in light of two hold-harmless provisions in a final divorce decree. Wife contends that the trial court abused its discretion by failing to enforce the hold-harmless and indemnification provisions and failing to address the parties' respective obligations with respect to the tax liens. We agree, and accordingly reverse and remand so the trial court can address wife's claims under Article 13 of the parties' divorce decree.

¶ 2. The parties' final divorce decree, entered on March 26, 2013, was based on a partial settlement agreement and the court's order resolving the remaining contested matters after a contested hearing. Articles 8, 11, and 13 are particularly relevant to this appeal.

¶ 3.   Article 8 awarded wife "sole use, ownership, and possession" of a property on Taber Hill Road in Stowe, Vermont (the property) free of any marital interests of husband.  Wife was obligated to refinance the outstanding mortgage loan on the property to remove husband from any liability by February 26, 2014.  In connection with this refinance, husband was obligated to "execute and deliver appropriate documents of conveyance to [wife] to convey all right, title and interest in the property."  If wife was unable to refinance, then she was required to immediately sell the property at a price agreeable to both parties.  In the event that wife failed to make any mortgage loan payments on the property, after ten days husband was authorized to make the outstanding loan payment and offset any sums owed to wife for spousal maintenance and child support.

¶ 4.   Article 11 gave husband sole ownership of his business, The Dayboat Fish Company LLC.  Husband was solely responsible for "all liabilities in connection with the business," and was required to "hold [wife] harmless and indemnify her against the payment of any monies and obligations or expenses in connection [with the business] which [wife] shall be obligated to pay to third parties by virtue of [husband's] failure to comply with the terms of this paragraph, including reasonable counsel fees and costs."

¶ 5.   Finally, Article 13 allocated various debts of the parties.  In addition to specifically addressing certain outstanding debts, it included the following general provisions:

> [Wife] shall be solely responsible for any and all debts or obligations, including credit cards debts [sic], which are in her name alone.

> [Husband] shall be solely responsible for any and all debts or obligations, including credit cards debts [sic], which are in his name alone.

> Neither party shall incur or contract any debt, charge, obligation or liability whatsoever for which the other party, his or her legal representatives or his or her property or estate is or may become liable, and shall indemnify and hold the other party harmless of all loss, expenses (including reasonable attorneys' fees) and damages in connection with or arising out of a breach of the foregoing.

The provision did not mention any outstanding tax obligations.

2

¶ 6.     The trial court found that the events giving rise to this particular dispute began in February 2014, when wife was unable to refinance the outstanding mortgage on the property and accordingly listed the property for sale. Wife entered into a purchase and sale agreement with a buyer in September 2014 at a sale price of $220,000. This sale price would have been sufficient to discharge the outstanding mortgage and provide wife with net proceeds of about $31,000. The closing for the purchase and sale of the property was to take place in November 2014. However, during the title search of the property, the buyers discovered that both the IRS and the State of Vermont Tax Department had outstanding tax liens on the property.

¶ 7.     The first IRS lien was recorded in the Stowe land records in November 25, 2013, in the amount of $10,841 for alleged underpayment of 2011 income taxes. The second was recorded on January 1, 2014, in the amount of $3949 for alleged underpayment of 2010 income taxes. Both IRS liens were recorded as against husband only. The family division noted that the parties filed their federal taxes jointly for the 2010 tax year, but that it was not clear how they filed in 2011. As for the state tax liens, the first was recorded on May 15, 2014, in the amount of $9237, and the second was recorded on August 29, 2014, in the amount of $1055. Both of the Vermont tax liens were against "[husband]/Dayboat Fish Co LLC" and were for sales and use taxes allegedly not paid or underpaid by husband's business.

¶ 8.     The family division found the record to be "murky and inconclusive" regarding whether wife knew previously about the IRS tax claims. Wife testified at the hearing that she looked at the land records when she originally listed the property, but that it did not occur to her that she should be looking for outstanding liens on the land. The family division noted that wife's claim she was "totally ignorant" of at least the 2010 tax lien was not credible because she filed an application for "Discharge of Property from Federal Tax Lien" in January 2014, and had filed with the IRS a "Request for Innocent Spouse Relief" as to the 2010 tax deficiency in September 2013. However, it

3

also found that husband did not inform wife about the existence of any of the liens and did not inform wife that he was having tax issues, even though he had admitted the state deficiencies and entered into a payment plan with the Vermont Department of Taxes in June 2014. In any event, husband was not able to clear the tax liens in September and October of 2014, thus preventing the closing and sale of the property.[1]

¶ 9.     Because of the difficulties surrounding the attempted sale of the property, including the need for wife's tenants to move out and the consequent loss of her rental income, wife missed some mortgage payments. Husband eventually made some payments on the mortgage, and he deducted those payments from the child support and spousal maintenance payments he owed to wife as permitted by the final divorce decree. The proper accounting for these deductions was one of the issues before the trial court below.

¶ 10.     Husband's deductions from child support and spousal maintenance payments and wife's inability to sell the property due to tax liens prompted wife to file with the family division a motion to enforce the final divorce decree and for attorney's fees. Wife pointed to the debt allocation and indemnification provisions in the final divorce decree, and explained that the likely loss of this buyer put her in a vulnerable position economically. She requested that the court order husband to immediately pay the tax obligations or otherwise arrange for discharge of the liens so that the home could eventually be sold. In addition, wife requested that the court order husband to assume wife's obligation to pay the mortgage, taxes, and all other carrying costs of the property until the liens were removed and the property sold. Wife further asked the court to suspend the provision in the final

---

[1] In December 2014 husband apparently received another "Notice of Deficiency" from the IRS asserting unpaid income taxes by him for the 2012 tax year of $145,572, plus a substantial tax understatement penalty of $29,114, for a total amount due of $174,686. This alleged deficiency apparently arose from the sale of the parties' other residence in 2012 in connection with which the 1099 documenting the entire amount of the sale proceeds was issued to husband only. Questions regarding responsibility for this tax liability were not the subject of the motions giving rise to this appeal, and are not before us.

decree that allowed husband to offset his mortgage payments from his spousal and child support obligations. Finally, wife requested that the court order husband to hold wife harmless and indemnify her for any damages she suffers from the attachment of his tax liens to the property.

¶ 11. Husband opposed the motion and cross moved for contempt and enforcement against wife. He argued that because the trial court had awarded the property to wife before the tax liens attached, the tax liens were inoperative and wife's time would be better spent seeking confirmation from the IRS that the liens are inoperative. He took the position that any indemnification obligations he had under the final order "do not arise until such time as [wife] is actually obligated to pay monies to a third party" and are not triggered by the tax liens. And he argued that wife was attempting to modify the final order concerning property division by requesting that he become responsible for the mortgage and any taxes and carrying costs associated with it. Husband sought a contempt finding against wife for her failure to pay the mortgage. He further requested that the court order wife to reimburse him for all costs and expenses incurred by him in paying the past-due mortgage.

¶ 12. The family division held a contested hearing on the motions on April 23, 2015, and July 8, 2015.[2] With respect to the financial issues, the court concluded that the only issue before it and capable of resolution was "whether the accounting for [the] mortgage payments not made by [wife], and deductions (or credits) taken by [husband] against his combined spousal maintenance and child support payment, is accurate." The trial court found on the basis of the record before it that husband owed wife a total of $94.30. With respect to the tax liens, their effect on wife's ability to sell the property, and wife's request to suspend the offset of husband's child and spousal support obligations on account of his mortgage payments, the trial court wrote:

> As to the larger issue of [wife's] inability to sell [the property], the court is unable to force any effective resolution until the tax liens are resolved, and lifted from the land records. The latter is essentially

---

[2] Although this appeal focuses narrowly on the property issues before the court in that hearing, we note that the hearing also addressed mother's motion to modify parent-child contact, and much of the court's order relates to parent-child contact issues.

undoable on this record because either [husband] does not have the wherewithal to do so, or the court under this docket number does not have the authority to adjudicate their respective liabilities. <u>No</u> contempt order, or monetary sanction is going to have any practical effect or achieve the desired result.

The court concluded that the "property situation is still too fluid for the court to make any definitive determination of who owes what to whom." It therefore denied without prejudice all requests regarding the property and ordered husband to pay wife the outstanding $94.30 in combined spousal maintenance and child support payments. The court did not consider whether husband had an affirmative obligation to clear the tax liens, whether he was liable for any damages pursuant to the indemnification provisions, or whether wife was entitled to any of the relief she requested as a means of enforcing husband's obligation. Wife appealed.[3]

¶ 13.   On appeal, wife argues that the trial court erred by failing to enforce the hold-harmless and indemnification provisions of the parties' final decree and order. Husband reiterates the arguments he made below as to the merits of wife's motion.

¶ 14.   We conclude that the trial court did err in failing to address the questions raised in wife's motion as to the parties' respective legal obligations, and that husband does have a present legal obligation pursuant to the indemnification provisions. Whether wife is entitled to any of the remedies she requests is a matter to be addressed in the first instance by the trial court.

I.  Failure to Address Wife's Claims

¶ 15.   In her motions, wife argued that husband has various obligations with respect to the tax liens by virtue of the final divorce order, and she requested various types of relief to enforce those obligations. The trial court's observation that its order was unlikely to have any practical effect in light of the tax liens and the parties' financial circumstances was reasonable, but this fact did not

---

[3]  Husband did not cross appeal the trial court's denial of his motion for contempt, and we do not address that issue.

6

discharge the trial court from addressing the claims before it. The trial court should have addressed the arguments in wife's motion.

¶ 16. Although the trial court may be right that husband does not have any practical ability to immediately pay the outstanding taxes that underlie the liens, this fact does not prevent the trial court from issuing an order reflecting the parties' respective obligations. The inability to comply with a financial obligation in an order issued by the family division may be a defense in a contempt proceeding, 15 V.S.A. § 603(e), but it does not vitiate the underlying obligation to pay. Moreover, an order establishing husband's obligations relative to the liens may have influenced his decision to leave wife the task of advocating to the IRS that the liens were invalid. Insofar as the parties' circumstances were, as the court suggested, fairly hopelessly "stuck," an order establishing their legal rights was one potential step toward breaking the logjam. Cf. State v. Ryan, 135 Vt. 491, 497, 380 A.2d 525, 529 (1977) (noting in context of pretrial motions in criminal case that, although trial court has some discretion as to which motions to resolve before trial versus later, where defendant requests ruling that will affect defense strategy and "there is no apparent reason to postpone the determination of the motion other than the desire to avoid a difficult issue," court should rule).

¶ 17. Additionally, while the trial court was correct that it did not have jurisdiction to adjudicate the parties' respective liabilities to the IRS, and could not have issued a binding order as to whether the liens were enforceable by the IRS, it did have jurisdiction to adjudicate the parties' respective obligations to one another pursuant to the final divorce decree. Because the issue of the parties' obligations to one another was squarely before the court below, it had a duty to resolve that issue. See Sec'y, Vt. Agency of Nat. Res. v. Irish, 169 Vt. 407, 419, 738 A.2d 571, 580 (1999) (recognizing trial court's "fundamental duty" to "resolve the issues before it").

II. Indemnification and Hold-Harmless Clauses

¶ 18. Wife argues that the clear and unambiguous language of Articles 11 and 13 place the burden on husband to bear responsibility for any liabilities in his sole name or associated with his

7

business. She asserts that the hold-harmless and indemnification agreements should be read to protect her from the consequences of husband's tax liens currently encumbering the property in her sole name. She also asserts that, because of husband's tax liens, she has suffered damages that are recoverable under the final decree. Husband argues that the indemnification and hold-harmless clauses kick in only when wife has paid money to third parties on account of husband's debts. Since wife has not been forced to pay any money on husband's outstanding tax liens, she remains unharmed for purposes of the indemnification and hold-harmless clauses, and therefore there is nothing for husband to indemnify.

¶ 19. We interpret final divorce decrees "according to contract principles." See Meyncke v. Meyncke, 2013 VT 82, ¶ 12, 194 Vt. 556, 82 A.3d 585 (citing Sumner v. Sumner, 2004 VT 45, ¶ 9, 176 Vt. 452, 852 A.2d 611). Our review of the trial court's interpretation of any contract is nondeferential and plenary. Dep't of Corrs. v. Matrix Health Sys., P.C., 2008 VT 32, ¶¶ 11-12, 183 Vt. 348, 950 A.2d 1201. We look first to the explicit terms of the decree and decide if they are ambiguous. John A. Russel Corp. v. Bohlig, 170 Vt. 12, 16, 739 A.2d 1212, 1216 (1999). "Where the language of the decree is unambiguous, we apply it according to its terms." Sumner, 2004 VT 45, ¶ 9 (citation omitted). "If an agreement, even if 'inartfully worded or clumsily arranged, fairly admits of but one interpretation, it may not be said to be ambiguous or fatally unclear.' " Towslee v. Callanan, 2011 VT 106, ¶ 5, 190 Vt. 622, 55 A.3d 240 (quoting Isbrandtsen v. N. Branch Corp., 150 Vt. 575, 580-81, 556 A.2d 81, 85 (1988)). Because the applicability of the indemnification clauses in this case presents a question of law that we review without deference, and because a remand would be unnecessary if wife's arguments had no merit, we consider the applicability of the indemnification provisions to the circumstances of this case.

A. The Scope of Articles 11 and 13

¶ 20. We conclude that husband does not have present legal obligations to wife pursuant to Article 11, but that he may have present legal obligations pursuant to Article 13. "We interpret the

8

indemnification provisions of this document as we do all contract provisions—to give effect to the intent of the parties as that intent is expressed in their writing."[4] Hamelin v. Simpson Paper (Vt.) Co., 167 Vt. 17, 19, 702 A.2d 86, 88 (1997).

¶ 21. To indemnify is "[t]o reimburse (another) for a loss suffered because of a third party's or one's own act or default" or "[t]o promise to reimburse (another) for such a loss" or "[t]o give (another) security against such loss." Black's Law Dictionary (10th ed. 2014). To hold a person harmless means "[t]o absolve (another party) from any responsibility for damage or liability arising from the transaction." Id.

¶ 22. In some cases, an indemnitor's obligation may accrue only when "the indemnitee has actually paid an obligation for which the indemnitee has been found liable" and the indemnitor's liability is limited to the actual amount the indemnitee was required to pay. Long v. McAllister-Long, 221 S.W.3d 1, 11 (Tenn. Ct. App. 2006). In other cases, a hold-harmless provision may require the indemnitor to pay certain sums of money or to perform other acts that will prevent harm or loss to the indemnitee. Id. Such provisions are sometimes described as "indemnity against liability" agreements. Id. (citing Crestar Mortg. Co. v. Peoples Mortg. Co., 818 F. Supp. 816, 819 n.4 (E.D. Pa. 1993); Diaz v. Diaz, 403 N.E.2d 1219, 1220 (Ill. App. Ct. 1980)). Ultimately, the scope of the indemnitor's liability is determined by the parties' intent as reflected in their indemnification provision.

¶ 23. Applying this guidance, we conclude that husband has no present legal obligation to wife pursuant to Article 11 solely by virtue of the tax liens attached to her property. Article 11 assigns husband sole ownership of his business and requires that he "hold [wife] harmless and indemnify her against the payment of any monies and obligations or expenses in connection [with the business]

---

[4] Although the indemnification provision at issue here was incorporated into a court order, the record reflects that the parties mutually approved the language of the indemnification provisions in the court's order.

9

which [wife] shall be obligated to pay to third parties by virtue of [husband's] failure to comply with the terms of [Article 11], including reasonable counsel fees and costs." Husband's obligation under this provision may accrue if wife becomes obligated to pay a third party—in this case the IRS or Vermont Department of Taxes—but his obligation does not extend to circumstances like this in which wife is not currently obligated to pay the tax arrears upon which the liens are based. See, e.g., McDonald v. McDonald, 882 S.W.2d 134, 136-37 (Ky. Ct. App. 1994) (noting trial court had no authority to order husband to indemnify wife under hold-harmless clause where husband had underlying debt discharged in bankruptcy and creditor had not yet proceeded against wife).

¶ 24. In contrast, we conclude that Article 13 imposes a broader obligation on husband and that he does have potential present liability on the basis of the tax liens regardless of whether wife is personally liable for any of the tax arrears. Article 13 assigns to husband and wife responsibility for each of their respective individual debts and provides:

> Neither party shall incur or contract any debt, charge, obligation or liability whatsoever for which the other party, his or her legal representatives <u>or his or her property or estate is or may become liable,</u> and <u>shall indemnify and hold the other harmless for all loss, expenses (including reasonable attorneys' fees) and damages in connection with or arising out of a breach of the foregoing.</u>

(Emphasis added).

¶ 25. Several features of this provision support our conclusion that husband's potential legal obligations under Article 13 have accrued and are not dependent on an enforcement action by a third party. First, the provision specifically prohibits both parties from not only personally incurring any obligations for which the other may become liable, but also from incurring any obligations which the other's "<u>property or estate</u>" may become liable. This provision expressly contemplates and addresses liabilities that attach to "property" or "estates" in addition to those for which the other person may become individually liable. Second, the provision is not limited to indemnifying wife against payment of monies for which she may become obligated; it expressly provides for payment of

10

expenses, including attorneys' fees, and <u>damages</u> arising from a breach of either party's obligation not to incur debt for which the other person or his or her property may become liable. Husband's obligation under this broadly worded provision arises upon breach of his obligation not to subject wife or her property to liability, rather than upon a third party's efforts to collect from wife, determination of her liability, or actual payment by her. See, e.g., <u>Gardner v. Gardner</u>, 2012 UT App 374, ¶ 24, 294 P.3d 600 (holding that, where hold-harmless clause required wife to "prevent harm or loss to" husband resulting from parties' mortgage, wife must indemnify husband not only for his mortgage payments, but also for damages flowing from her non-payment); <u>Long</u>, 221 S.W.3d at 10-11 (reasoning that "[a] hold harmless agreement . . . is generally classified as an indemnity against liability" agreement).

¶ 26.     We reject the suggestion that the indemnification requirement in Article 13 applies only to debt incurred after the divorce. The placement of this provision in the section governing "distribution of debts," immediately following provisions assigning the parties any and all debts or obligations in their respective sole names, and the indemnification provision's express application to "breach of the foregoing" supports the conclusion that the indemnification requirements apply not only to debts incurred post-divorce, but also to individual debts incurred during the marriage and either undisclosed or unaddressed in the final divorce order. To conclude otherwise would render the word "foregoing" superfluous. See <u>Dyke v. Scopetti</u>, 2015 VT 53, ¶ 21, 199 Vt. 127, 121 A.3d 684 (applying Pennsylvania law and explaining that " 'we must give effect to every word and clause' of a legal instrument, 'so as not to render any provision nugatory or mere surplusage' " (citation omitted)).

¶ 27.     Moreover, this understanding is most consistent with Article 13 as a whole. Article 13 allocates some specified debts to one party or another, and each such allocation is accompanied by an indemnification clause. If we read the clause at issue here as applying only to post-divorce debts, then Article 13 would allocate specific debts to each individual through express

11

indemnification provisions and would provide for indemnification in connection with debt incurred post-divorce, but would include no enforcement mechanism for its general catch-all allocation of individual debts. SKI, Ltd. v. Mountainside Props., Inc., 2015 VT 33, ¶ 23, 198 Vt. 384, 114 A.3d 1169 ("When interpreting a contract, we 'strive to give effect to every part of the instrument and form a harmonious whole from the parts.' " (citation omitted)).

### B. Application to the Liens in Question

¶ 28.   We conclude that husband may have breached his obligations pursuant to Article 13 and may therefore be subject to present liability with respect to one of the two federal tax liens, and that he has breached the requirements of the final divorce order as to both of the state tax liens.

¶ 29.   Husband has not breached Article 13 in connection with the tax lien for the outstanding 2010 federal taxes because those taxes were a joint debt at the time of the divorce. The trial court found that for the 2010 tax year, husband and wife filed a joint federal tax return, meaning the tax obligation associated with that return was a joint debt. The court found that following the divorce, wife had requested from the IRS "Innocent Spouse Relief" in connection with this tax arrearage, and that the IRS had either denied the relief or had not yet ruled on it.[5] Even assuming that the IRS has formally released wife from the joint debt so that she is not liable to the IRS, husband has not breached Article 13 in connection with that debt because he did not fail to pay a debt that was his sole debt at the time of the divorce and did not incur a debt post-divorce for which wife or her property became obligated.

¶ 30.   By contrast, it appears that husband has breached Article 13 in connection with the second federal tax lien for underpayment of 2011 income taxes. We hedge in our analysis of the 2011 tax arrearage because the trial court found that the record was not clear as to whether the parties filed

---

[5] Wife testified at the hearing that she had been awarded relief from the IRS in response to her request, and the court admitted a copy of an IRS letter dated March 13, 2014, reflecting its grant of the requested relief. Our analysis does not turn on the accuracy of the trial court's finding on this point.

their federal income tax return jointly in 2011 and that the tax return was not of record. It also found that the tax lien itself was recorded as against husband only. On remand, the trial court should determine whether the 2011 income tax arrearage upon which the tax lien is based is a personal debt owed by husband only at the time of the divorce or if it is instead a joint debt.

¶ 31. The tax arrearages underlying the two state tax liens are and were at the time of divorce husband's sole debts, and his failure to pay them amounts to a breach of Article 13. Both arrearages were for unpaid sales and use taxes that were either not paid or were underpaid by husband's business. Although the unpaid taxes were due from husband's limited liability company, liability for failure to pay them extends to husband individually. 32 V.S.A. § 9703 (providing that liability to pay sales and use tax extends to any officer or agent of corporation or entity who is under duty to collect tax and transmit it to tax commissioner). A substantial portion of the unpaid sales and use taxes were unpaid at the time of the final divorce, and husband has incurred the additional debts since that time. Husband's failure to pay these taxes, and the consequent impact on wife as a result of the tax liens, triggers the protections of Article 13 and may support a claim for damages or other relief.

### III. Damages and Remedies

¶ 32. Whether in this case wife is entitled to damages or other remedies is a question for the trial court to consider on remand. In connection with her motion to enforce below, wife asked the trial court to: (1) order husband to immediately pay off the liens or otherwise obtain their discharge from the property; (2) order husband to assume all carrying costs associated with the property, including the mortgage and property taxes, until the property is sold; (3) suspend husband's ability to offset any mortgage payments made on the property from his spousal maintenance and child support obligations; (4) order husband to hold wife harmless and indemnify her against any obligations or expenses arising from the tax liens, including but not limited to any cause of action by the buyers under the purchase and sale agreement; and (5), order husband to pay any attorneys' fees incurred by wife in connection with her motion to enforce.

13

¶ 33. Whether any or all of these remedies are warranted by the evidence and are permissible methods of enforcing husband's obligations under Article 13 are questions for the trial court to consider on remand. Compare Boisselle v. Boisselle, 162 Vt. 240, 242, 548 A.2d 388, 389 (1994) ("Vermont law is clear that the court cannot modify the property disposition aspects of a divorce decree absent circumstances . . . that would warrant relief from a judgment generally."), with Schwartz v. Hass, 169 Vt. 612, 614, 739 A.2d 1188, 1190-91 (1999) (mem.) (affirming trial court's order under motion to enforce suspending portion of husband's maintenance payments under decree until wife paid him $50,000 because this Court "view[ed] this situation as one in which the family court was not modifying its property division or maintenance award but, rather, was seeking to enforce the terms of the decree as originally entered in the face of intransigence by one of the parties").

Affirmed in part (as to claims based on Article 11), reversed in part (as to claims based on Article 13), and remanded.

FOR THE COURT:

_____

Associate Justice

14